325 So.2d 331 (1975)
Calvin LAMBERT, Plaintiff and Appellant,
v.
HEIRS OF Joseph ADAMS et al., Defendants and Appellees.
No. 5239.
Court of Appeal of Louisiana, Third Circuit.
December 24, 1975.
Rehearing Denied January 28, 1976.
Writ Refused March 16, 1976.
*333 Kenneth W. Ford, Morgan City, for plaintiff and appellant.
James A. Hammers, St. Martinville, for defendants and appellees.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
CULPEPPER, Judge.
This is a petitory action. The plaintiff, Calvin Lambert, seeks judgment recognizing him as owner of a tract of land fronting about 5 acres on Belle River in St. Martin Parish. The defendants are the heirs of Joseph Adams, who, plaintiff admits in his petition, are the record owners of the land in dispute. The district court rendered judgment on the merits dismissing plaintiff's suit. Plaintiff appealed. We affirm.
The issues are: (1) Did the trial court err in failing to grant plaintiff's motion for a continuance before the trial? (2) Was certain evidence properly admitted over plaintiff's objection that it was hearsay and self-serving? (3) Did plaintiff prove by a preponderance of the evidence that his parents acquired ownership by the acquisitive prescription of 30 years?
In 1973, plaintiff purchased the property for $250 from his mother, Ozelia A. Lambert, and his brothers and sisters, who, together with the plaintiff, are the sole heirs of his father, Felix Lambert. Plaintiff claims that his mother and father had acquired ownership of the property by the acquisitive prescription of 30 years. Defendants contend that, even assuming the Lamberts had lived on the property for over 30 years, they never intended to possess as owners and that they actually paid rent to defendants almost every year from 1946 through 1969.
At the time of the trial in 1975, Lambert was 59 years of age. He stated that when he was a child his family lived in a houseboat on the river, tied to the bank at approximately the center of the property. His father, Felix, was a trapper and worked in the swamps. He would move the houseboat to wherever his job was. After a job was completed, he would bring the houseboat back and tie it up in the same location.
Plaintiff testified that about 40 years age, the houseboat was pulled from the river onto the property and the boat was enlarged, renovated and utility services were added. The Lamberts also built a fence, a hog pen, sheds and a chicken coop. There is a conflict in the testimony as to when these improvements were erected. Plaintiff and his mother say the entire property was enclosed by a fence before the houseboat was pulled onto the bank. But other witnesses testified no improvements were built by the Lamberts until after the boat was pulled onto the land.
The evidence as a whole indicates that the Lamberts have been residing on the land for more than 30 years. But it also shows that other persons have been living upon the property here in dispute. Plaintiff himself admitted that Ivey Leonard has lived next door for approximately 40 years. Paul Gros, who lives on his own land on Belle River close to the Lamberts, testified that the Leonards had been on the land in dispute at least since 1947. Plaintiff also admitted that Harry Blanchard has lived on the land for at least 24 years. Mrs. Harry Blanchard, who was 49 years old at the time of the trial, testified that she has been on the property since she was 6 years old. Besides these families, other persons have also lived on the land. Plaintiff *334 conceded that none of these persons possessed with permission of the Lamberts or paid rent to the Lamberts.
At the trial, several persons testified that although the Lamberts had been on the property for many years, they had not begun to claim ownership until about 1969. Only one witness, Aline Hebert, said the Lamberts had claimed ownership before 1969, and she did not give a specific date.
Defendants introduced receipt books showing collections of rent from plaintiff's father. These receipt books were not complete records, but they did show that rent was collected as early as 1952 and as late as 1969. Patricia Adams, the daughter-in-law of defendant, Bernie Adams, testified that her husband, who was deceased at the time of the trial, had begun collecting rent in 1952 and had collected it through 1968. She said she went with him to collect it sometimes but she could not remember exactly when. She says she collected the rent in 1969 after her husband's death in 1968.
Plaintiff and his mother testified at the trial that his father and mother had never paid rent to anyone and had never been asked by anyone to pay the rent. However, in a pretrial deposition, plaintiff's mother, Ozelia Lambert, admitted she had once paid rent to the Adams family for a few months and then stopped. She stated that this was 10 to 15 years ago.
Defendant, Bernie Adams, testified that Felix Lambert had first paid rent to him in 1946 or 1947 and that he collected One Dollar a year until his son started collecting the rent in about 1952. Telesmar Landry corroborated this testimony. He testified that 39 or 40 years ago, he took Bernie Adams in his boat to collect the rent and that he had seen Felix Lambert pay it. He said that Bernie collected One Dollar rent and put it in one pocket and took a dollar out of the other pocket and gave it back. Landry testified he understood Adams collected the rent "just so they don't homstead his land."
The evidence also shows clearly that the Adams family collected rent from the other families living on the property. Mrs. Blanchard testified she had paid rent since 1952.
On appeal, appellant urges that certain evidence was improperly admitted over his objections that it was self-serving and hearsay. He contends that if this evidence were excluded, there would be insufficient proof to dismiss his suit. Specifically, the objections refer to the introduction of the receipt books purporting to show rent payments on the disputed property and to certain statements by Mr. Adams that rent was collected by him in 1940 and by his son from 1946 or 1947 until 1969. Objection is also made on appeal to the testimony of Telesmar Landry that he had taken Bernie Adams to collect rent from the Lamberts.
The fact that testimony is selfserving does not form the basis for a valid objection. This is a factor which goes to the weight of the testimony. The only question is whether the evidence objected to was improperly admitted under the hearsay rule. This rule excludes "extrajudicial statements offered to prove the truth of the matter contained in the statement." G. Pugh, Louisiana Evidence Law, p. 413 (1974); Veal v. Hutchinson, 284 So.2d 60 (La.App., 4th Cir. 1973). Hearsay evidence is excluded as being unreliable because it is based on statements made by persons who are not before the court, have not been sworn and are not available for cross-examination. Manuel v. American Employment Insurance Company, 212 So. 2d 527 (La.App., 3rd Cir. 1968).
Plaintiff attacks the testimony of Bernie Adams and Telesmar Landry as to the occasion in about 1946 when they went in Landry's boat and collected the first rent from Felix Lambert. This testimony was *335 not hearsay. Both witnesses testified from personal knowledge.
Defendant strenuously attacks as hearsay the testimony of Bernie Adams that his son collected rent. Counsel refers particularly to page 267 of the transcript for this testimony. A reading of that page indicates that no objection was made by counsel. Furthermore, other portions of the record contain testimony that Adams' son collected rent.
Appellant contends the receipt books are hearsay. We agree. However, they are admissible under the "Business Records" exception to the hearsay rule. The criteria for that exception was summarized in the recent case of Pritchard v. Wolfe, 230 So.2d 612 (La.App., 3rd Cir. 1970). There we said, quoting from La.L. Rev. 459 through 460:
"The modern Louisiana cases can be summarized as follows. Records of industrial and commercial organizations, as well as medical reports and hospital records are admissible as proof of their assertions if: (1) persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden; (2) the first collected record available to or usable by the court is introduced; (3) the records are identified at the trial by one familiar with the bookkeeping procedure; and (4) the evidence seems reliable after considering such factors as (a) contemporaneousness of the entry with the occurrence or fact recorded, (b) first-hand knowledge of the entrant, (c) existence of a business or professional duty to record or report the facts in the regular course of business, (d) completeness and honest appearance of the books, (e) absence of fraud in making the entries or in destroying the supporting memoranda, and (f) perhaps, whether the books belong to a third party."
See also G. Pugh, Louisiana Evidence Law, p. 486 (1974)
In the present case, these criteria were met. The person who made these receipts, Mr. Bernie Adams' son, is now deceased. His wife, Mrs. Patricia Adams, was familiar with the records and she testified regarding them at the trial. The records appear to have been made contemporaneously with the rent payments and they were made by the late Mr. Adams who had first-hand knowledge of the transactions. In addition, the receipts were made in the regular course of business and appeared to be honest and reliable on their face. Garner v. T. R. Johnson Plumbing Company, 208 So.2d 18 (La.App., 1st Cir. 1968) and Broome v. Simon, 255 F.Supp. 434 (W.D. La. 1965).
The question in the instant case is simply whether the requirements of LSA-C.C. Article 3500 have been met, i.e., whether the Lamberts possessed publicly and unequivocally and under claim of ownership for more than 30 years. Clearly, they did not. As has already been pointed out, plaintiffs were not the only persons living on the land here in dispute. The evidence indicates that the Leonard family and the Blanchard family and others also lived on the land and paid rent to the Adams family. There is little if any evidence to indicate that the Lamberts claimed the property as owners until very recent years.
Appellant urges, however, that no evidence that the property had been leased may be considered because a lease would be in violation of Article 2997 of the Civil Code which requires that the power of mandate must be express and special for the purposes of encumbering or hypothecating. He suggests that none of Joseph Adams' heirs were authorized to grant a lease. We cannot agree that Article 2997 is controlling here. Under Article 3500 of the Civil Code the issue is whether a person possesses publicly, unequivocally and under the title of owner. If he does not possess as owner but rather believes himself to be leasing property, it matters not that in fact his lease may be invalid. We *336 therefore find it unnecessary to determine whether "encumber" or "hypothecate" in Article 2997 of the Civil Code includes the lease of property.
Appellant's final contention is that the trial judge erred in refusing to grant a continuance before trial. LSA-C. C.P. Article 1601 provides:
"A continuance may be granted in any case if there is good ground therefor."
Article 1602 provides:
"A continuance shall be granted in the following cases: (1) If the attorney of record in the case is a member of the legislature and his absence is caused by his attendance at a legislative session; or (2) If at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance."
In this case, the granting or refusal to grant the motion for continuance was discretionary. No peremptory grounds under Article 1602 were alleged or shown.
Counsel for plaintiff urges that the trial court abused its discretion by refusing plaintiff's motion for a continuance and that injustice, unfairness and inequity have resulted. Injustice of the parties is well recognized as an important factor in deciding whether to grant a continuance. See Eskine v. Brown, 125 So.2d 684 (La.App., 1st Cir. 1960). A trial judge must always consider the effect a continuance would have on the administration of justice. Bryer Insurance Agency, Inc. v. Bruno, 244 So.2d 667 (La.App., 4th Cir. 1971). However, in this case we are unable to say that injustice has resulted.
On March 3, 1973, Calvin Lambert filed suit claiming the pertinent land. Mr. Michael Patterson was his attorney. After suit was filed, the course of events was as follows:
"June 19, 1974: Mr. Michael Patterson filed notice to take depositions on seven persons. The depositions were set for July 11, 1974 (T-61). Civil subpoenas were issued (T-62 et seq). Depositions, including those of the plaintiff and his mother, were taken on July 11, 1974 (T-94 and 101). The certificate to the depositions indicate the depositions were prepared on the 17th and 18th of August, 1974.
"August 30, 1974: Motion to Withdraw as counsel for Calvin Lambert was filed by Michael A. Patterson (T-70). An order was signed permitting his withdrawal from the case.
"September 18, 1974: Motion was filed to fix for trial by defendants. Trial was not set until March 24, 1975, because this was the earliest time fixing could be obtained.
"January, 1975: Mr. Calvin Lambert contacted Mr. Neal Bagwell, Attorney at Law, to represent him (T-147). Thus, Mr. Bagwell was aware of the case several months before the trial on March 24, 1975.
"March 5, 1975: Subpoenas issued to defendants' witnesses.
"March 20, 1975: Mr. Neal Bagwell mailed motions to be enrolled as attorney and motion for continuance on behalf of plaintiff, Calvin Lambert (T-81,82). The first time that defendant's attorney had known that Mr. Bagwell would represent Calvin Lambert was on Friday, March 21, 1975, (T-149), only three days before the trial, two days of which were not regular business days.
"March 24, 1975: Date of trial."
Although the record shows that no definite arrangements for representation had *337 been made in January when Mr. Lambert first contacted Mr. Bagwell to represent him, arrangements for representation could have been made at that time either with Mr. Bagwell or with another attorney. If plaintiff had arranged for legal representation at that time, there would have remained sufficient time before the trial date for the attorney's preparation. A defendant in litigation has a right to have his case heard as soon as is practicable. For him to remain at the mercy of a dilatory opponent would most certainly result in injustice. This is particularly true where plaintiff's case is a weak one, as it is here.
In the granting of a continuance on discretionary grounds, the trial court has great discretion and that discretion is considered abused only in exceptional circumstances. Evans v. Travelers Insurance Company, 220 So.2d 117 (La.App., 3rd Cir. 1969); Gossett v. Nealy, 230 So.2d 671 (La.App., 3rd Cir. 1970); Manley v. Manley, 203 So.2d 832 (La.App., 2d Cir. 1967). In the present case, we are unable to say that those exceptional circumstances are present. As we stated in Evans v. Travelers Insurance Company, supra:
"It seems to us that plaintiff simply did not undertake to retain counsel at a time which would have permitted an attorney time to take any steps he felt necessary in the preparation of [his] case. This court cannot agree with plaintiff that [his] case has been prejudiced by the refusal of a continuance when the sole reason for [his] not being prepared is [his] own lack of due diligence."
A trial court's decision to grant or refuse to grant a continuance will not be disturbed on review in the absence of clear abuse. Evans v. Travelers Insurance Company, supra; Manley v. Manley, supra.
For the reasons assigned, the decision of the trial court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
Affirmed.