WILLIAM A. CULPEPPER, Justice Ad Hoc*.
This is a suit for payment of a promissory note. The plaintiff is the holder but not the owner. Defendants, makers of the note, filed an answer alleging payment. The trial court rejected defendants’ defense of payment and held for plaintiff on the merits. The Court of Appeal, 360 So.2d 579 (La.App. 4th Cir. 1978), reversed, with one judge concurring on different grounds. The majority held, on its own motion, that since plaintiff is not the owner of the note nor shown to be specially authorized by the owner to sue, he has no right of action. The concurring judge was of the opinion the record shows defendants had paid the note.
We granted certiorari, 362 So.2d 797, principally to consider whether the majority in the Court of Appeal erred in deciding that the holder, who is not the owner, of a promissory note cannot sue for payment. We ultimately conclude the majority erred in this respect. Nevertheless, we affirm the decision of the Court of Appeal on the basis that defendants paid the note.
The record shows that on August 25, 1971, defendants borrowed $10,000 from American Budget Plan, Inc., a finance company. They executed two separate promissory notes, referred to as “hand notes”, for the sum of $5,375 each, payable to bearer. To secure each hand note, defendants executed on the same day a collateral mortgage note and mortgage for the sum of $10,000, the mortgages being on separate pieces of immovable property.
In March of 1972, American Budget Plan, Inc. borrowed a total of $30,300 from Daniel L. Levy, Jr. and his sisters. The plaintiff, Levy’s brother-in-law, acted as agent for Levy and his sisters in loaning the $30,-300 to American Budget. When plaintiff delivered his two checks totaling $30,300 to American Budget, he received as security for the loans the pledge of certain promissory notes executed by third parties and held by American Budget. Among the notes thus pledged was one of the hand notes in the sum of $5,375 executed by defendants on August 25, 1971. Thereafter, plaintiff held the notes as agent for the owners and received for them the monthly payments on the $30,300.
In 1975, American Budget defaulted on the monthly payments due on the $30,300. On October 1, 1975, plaintiff filed this suit on the hand note he held as part of the security pledged for the $30,300 loan.
The first issue is whether the majority in the Court of Appeal erred in holding that although the plaintiff is the holder of the note he cannot sue for payment, because he is not the owner, nor does the record show that he is specially authorized by the owner, under LSA-C.C.P. Article 694, to sue for payment. LSA-R.S. 7:51 of the Negotiable Instruments Law, which was in effect at the time the promissory note in question was executed in 1971, provided:
“The holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course discharges the instrument.”
LSA-R.S. 7:191 contains the following definitions:
“ ‘Bearer’ ” means the person in possession of a bill or note which is payable to bearer.
* * * * * *
*351 “ ‘Holder’ means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.”
These provisions of our prior Negotiable Instruments Law make it clear that the holder of a note may sue thereon in his own name, and a holder is defined as including the bearer in possession of a note which is payable to bearer. The note at issue is payable to bearer. This was the construction of these statutes in Paletou v. Sobel, 185 So.2d 95 (La.App. 4th Cir. 1966), where the court stated:
“If plaintiff was a holder of the notes under the provisions of Section 51 he does have a right of action. From our jurisprudence it is plain that plaintiff was entitled to sue in his own name even though he was only given possession for the purpose of collection.” (citations omitted)
The law is the same under the new Commercial Laws adopted in 1974. LSA-R.S. 10:3-301 provides:
“The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in R.S. 10:3-603 on payment or satisfaction, discharge it or enforce payment in his own name.”
We next address the issue of whether the note sued on was paid. The facts must be set forth in sufficient detail to determine: (1) Was American Budget the agent of the plaintiff for collection of the note? (2) If so, was the note paid to American Budget?
Sometime before March of 1972, Daniel L. Levy, Jr. and his sisters had collected fire insurance benefits which they decided to invest. Levy had been a member of the board of directors of American Budget until about 1969, so he contacted Mr. Peter L. Plaia, Chief Executive Officer of American Budget, and these two agreed on the terms of the loan. The plaintiff, Levy’s brother-in-law, acted as agent for Levy and his sisters in delivering the money, holding the security and keeping a record of the payments. On March 27, 1972, plaintiff delivered his personal check in the sum of $18,-300 to American Budget, which amount, together with interest, was to be repaid in monthly installments over a period of five years. On March 30, 1972, Caballero delivered to American Budget his check in the sum of $12,000, also to be repaid with interest over a period of five years. On the occasion of the delivery of each check, Caballero received an envelope containing promissory notes made by third parties and held by American Budget. These notes were pledged by American Budget to Caballero as security. Among these pledged promissory notes was the one at issue here made by defendants, Mr. and Mrs. Cerdes.
Plaintiff kept a record on the $18,300 loan and on the $12,000 loan to American Budget, showing the amounts of the monthly payments by American Budget, the amounts attributed to principal, the amounts attributed to interest, the amounts of “interest” paid to American Budget, and the principal balances due. For instance, plaintiff’s records, which are filed in evidence, show that on the $18,300 loan, the monthly payments were $483, the sum of $305 was attributed to principal, the sum of $138 was attributed to interest, retained by Caballero, and the sum of $40 was paid to American Budget as its share of the “interest”. On the loan of $12,000, the payments were $350 per month, of which $200 was principal, $90 was interest for Caballero and $60 was American Budget’s share of the “interest”. American Budget made these monthly payments to plaintiff and received its respective portions of the “interest” of each payment until October of 1975, at which time American Budget defaulted. A principal balance of $5,490 was still due to plaintiff on the total loans of $30,300.
When questioned as to the nature of the $40 and the $60 “interest” paid by Caballero to American Budget out of the monthly payments, Levy said he understood these were “finder’s fees”. This implies they were paid to American Budget for finding the loans and continuing to receive the monthly payments. Caballero testified he did not know what it was for, since Levy had made the agreement with Plaia. In any event, it is clear that American Budget *352 was plaintiff’s compensated agent to collect the note sued on.
When American Budget defaulted in 1975, plaintiff handed to his attorney for legal action the promissory notes which he had received as pledges from American Budget. Amongst these promissory notes was the one signed by Mr. and Mrs. Cerdes, and which is the subject matter of this suit.
The defense of payment arises out of the fact that during April and May of 1973, Mr. and Mrs. Cerdes had refinanced the debts they owed to American Budget. They borrowed money from two homesteads, executing new mortgage notes and mortgages on the immovable properties. When these new loans were closed, the mortgage notes held by American Budget were paid and the mortgages were canceled. Mr. Peter Plaia, representing American Budget, received one check payable to his order in the sum of $5,125 on which there is the notation: “Pay out of collateral mortgage dated 8/25/71— Julius W. Cerdes.” At the other loan closing, Peter Plaia received a check payable to his order in the sum of $5,250. Copies of both checks filed in evidence show they were deposited to the personal account of Peter Plaia. The evidence shows without question that these checks were intended and understood to be in payment of the entire debt owed by Mr. and Mrs. Cerdes to American Budget. Nevertheless, a problem of payment arises because the checks were made payable to Peter Plaia, instead of American Budget Plan, Inc., and because neither of the hand notes were surrendered to defendants or marked paid. As stated above, the hand note herein sued on was at the time being held by the plaintiff, Caballero.
The evidence also shows that when the hand notes executed by Mr. and Mrs. Cerdes on August 25,1971 matured 90 days thereafter, they made an agreement with American Budget to “extend” the notes in consideration of the payment of $250 per month. Defendants made these monthly payments to American Budget until they refinanced with the homesteads in April and May of 1973, thus making a total of about 20 payments of $250 each. And, as stated above, at the time the new homestead loans were closed, the balances due on the hand notes were paid to American Budget, through its chief executive officer, Peter Plaia.
There is no evidence that Mr. and Mrs. Cerdes had knowledge of the pledge of their hand notes by American Budget to Caballero. On the contrary, Mr. and Mrs. Cerdes understood that American Budget held their hand notes, and that the monthly payments, as well as the pay-offs at the times of closings of the new homestead loans, were paid to the holder of the hand notes.
Under the above circumstances, we conclude that American Budget Plan, Inc. was the agent of Caballero for collection of the hand notes. Thus, payment by Mr. and Mrs. Cerdes to American Budget through its officer, Peter Plaia, was equivalent to payment to Caballero.
LSA-R.S. 7:119 provides in part that a negotiable instrument is discharged: “(1) By payment in due course by or on behalf of the principal debtor.” LSA-R.S. 7:88 states: “Payment is made in due course when it is made at or after the maturity of the instrument to the holder thereof in good faith and without notice that his title is defective.” We find no express provision of our Negotiable Instruments Law that payment in due course may be made to the agent of the holder. However, LSA-C.C. Article 2145 provides the general rule that “Payments in general can legally be made only to the creditor, or someone empowered by him.”
Applying the above statutory rules to the facts of the present case, payment by defendants to American Budget had the same effect as if payment had been made direct to Caballero. However, we are careful to point out that this suit is by the holder whose agent received payment. It is not a suit by a holder who has not received payment directly nor through an agent.
For the reasons assigned, the judgment of the Court of Appeal is affirmed and *353 plaintiff’s suit is dismissed. All costs in the trial and appellate courts are assessed against the plaintiff.
AFFIRMED.

 Chief Judge William A. Culpepper of the Court of Appeal, Third Circuit, participated in this decision in place of Chief Justice Sanders, retired.