572 So.2d 1106 (1990)
FIRST NATIONAL BANK
v.
A.E. CARR, Jr.
No. 89 CA 1811.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
*1107 Tom W. Thornhill, Slidell, for plaintiff-appellee.
James F. Quaid, Metairie, for defendant-appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal in a suit on three promissory notes.

FACTS
On July 1, 1988, First National Bank (FNB) filed suit against A.E. Carr, Jr. for $39,903.79 plus interest and attorney's fees, arising out of three promissory notes.[1] On December 7, 1988 (the date of *1108 the trial on the merits), Carr filed a peremptory exception pleading the objection of "no right of action and no cause of action."[2] In his exception, Carr asserted that FNB was no longer a holder of the promissory notes in that Hibernia National Bank (Hibernia) had acquired the notes. On that same day, Hibernia filed a motion and order to substitute itself as plaintiff in place of FNB, which was signed by the trial judge.
After hearing all of the evidence, the trial judge denied Carr's exception pleading the objection of no right of action and rendered judgment in favor of Hibernia and against Carr as follows:
1. [I]n the principal sum of SIX HUNDRED SEVENTY-THREE AND 23/100 ($673.23) DOLLARS plus accrued interest of $79.29 as of December 7, 1988 with interest from that date at a rate of 13.75 percent per annum until paid.
2. [I]n the principal sum of TWENTY-FIVE THOUSAND TWO HUNDRED FIFTY AND NO/100 ($25,250.00) DOLLARS plus accrued interest of $4,353.37 as of December 7, 1988 with interest from that date at a rate of 14 percent per annum until paid.
3. [I]n the principal sum of THIRTEEN THOUSAND NINE HUNDRED EIGHTY AND 56/100 ($13,980.56) DOLLARS plus accrued interest of $1,659.65 as of December 7, 1988 with interest from that date at a rate of 14 percent per annum until paid.
The trial judge also awarded Hibernia $2,500.00 in attorney's fees plus all costs.
From this adverse judgment, Carr appeals, raising the following issues:
I. Whether Hibernia National Bank is the proper party/plaintiff in the lawsuit and real party-in-interest.
II. Whether Hibernia National Bank was properly substituted for First National Bank prior to trial on the merits.
III. Whether A.E. Carr, Jr., defendant, was entitled to a continuance to respond to the lawsuit after substitution was improperly effected in the midst of trial on the merits.
IV. Whether or not Hibernia National Bank is a holder in due course.

IS HIBERNIA THE PROPER PARTY PLAINTIFF?
FNB instituted the instant suit. On the day of trial, Carr filed a peremptory exception pleading the objection of no right of action. In support of this exception, Carr argued that FNB was not the proper party to institute the suit because its assets had been acquired by Hibernia. Carr alleged that he had been notified that Hibernia would service his note and account and that FNB was no longer a holder of the note. Carr reasoned that, as such, Hibernia was the proper party plaintiff. Attached to Carr's memorandum in support of his exception was a photostatic copy of the legal notice of Hibernia's acquisition of FNB's assets. The matter was referred to the merits.
On that same day, Hibernia filed a motion to substitute itself as party plaintiff on the grounds that it had purchased all of the assets and deposits of FNB. The trial *1109 court granted Hibernia's motion, and the matter proceeded to trial against Carr.
On appeal, Carr now contends that Hibernia is not the proper party plaintiff. Carr reasons that there is no evidence in the record to show that FNB has been dissolved or that Hibernia acquired FNB's assets, particularly the three promissory notes sued upon.
The exception of no right of action raises the question of whether the plaintiff has any interest in enforcing judicially the right asserted. LSA-C.C.P. art. 927(5); In re Norton, 471 So.2d 1053 (La. App. 1st Cir.1985); Edwards v. Superior Coach Sales, Inc., 417 So.2d 1289 (La.App. 1st Cir.), writ denied, 422 So.2d 423 (La. 1982). Evidence supporting or controverting an exception of no right of action is admissible. LSA-C.C.P. art. 931; Edwards v. Superior Coach Sales, Inc., 417 So.2d at 1290; Gustin v. Shows, 377 So.2d 1325 (La.App. 1st Cir.1979).
In the instant case, the uncontradicted testimony of Edward F. Gantar, Jr. established that Hibernia purchased the assets of FNB and that the three notes giving rise to the instant suit were among the assets purchased by Hibernia. The trial judge, in his oral reasons for judgment, stated that he accepted the testimony of Gantar and that, based upon this testimony, Hibernia proved by a preponderance of the evidence that it was the proper party plaintiff.
Additionally, we note that the three promissory notes sued upon were bearer paper.[3] Bearer paper is transferable by mere delivery. LSA-R.S. 10:3-202(1); New Orleans Federal Savings and Loan Association v. Lee, 449 So.2d 1099 (La.App. 5th Cir.), writ denied, 456 So.2d 167 (La.1984). Hibernia established its status as a holder by producing the original notes. A holder is defined as a person "who is in possession of ... an instrument ... drawn, issued or indorsed ... to bearer...." LSA-R.S. 10:1-201. As a holder of an instrument, Hibernia has the right to enforce payment of the obligation. LSA-R.S. 10:3-301. See Caballero v. Wilkinson, 367 So.2d 349 (La. 1979); Chenault v. C & H Enterprises, Ltd., 514 So.2d 535 (La.App. 3rd Cir.1987).
Clearly, the trial court correctly determined that Hibernia established that it had an interest in judicially enforcing payment of the three promissory notes and that it had a right of action in the instant case.

SUBSTITUTION
Carr contends that the trial court erred in permitting Hibernia to substitute itself as party plaintiff on the day of the trial. Carr reasons that any substitution must take place prior to a trial on the merits and that Hibernia's motion to substitute was filed untimely.
LSA-C.C.P. art. 807, provides that:
When a party to an action transfers an interest in the subject matter thereof, the action shall be continued by or against such party, unless the court directs that the transferee be substituted for or joined with the transferor.
Comment (a) to this article provides as follows:
(a) This article makes it possible for the trial court to order the substitution or joinder of the transferee, when a party has transferred an interest in the subject matter of the action after its institution, but prior to trial. At the same time, it insures the validity of the judgment for and against the original parties, if the transferee is not subject to the jurisdiction of the court, or if for any other reason the trial court feels it unnecessary or inadvisable to require the substitution or joinder. (Emphasis added).
In the instant case, the record reflects that immediately after Carr filed his exception pleading the objection of no right of action, Hibernia filed its motion to substitute. Carr argued that the motion to substitute should be denied, contending that he *1110 was entitled to know the identity of the holder of the promissory notes so that he could adequately prepare for trial.
We find no merit in Carr's contentions. Carr was fully aware of the status of FNB and Hibernia before the trial began. In fact, his exception was premised upon this information.
The trial judge is vested with broad discretion in conducting trials in a manner which he determines will be conducive to justice. Anderson v. Visa, Ltd., 478 So.2d 1346 (La.App. 5th Cir.1985). See also LSA-C.C.P. art. 1631. Apparently the trial court realized that no unfair prejudice or surprise would result to Carr if the substitution were allowed. Therefore, we cannot say that it was improper for the trial judge to allow the substitution.

CONTINUANCE
Carr contends that the trial court erred in denying his request for a continuance.
In Patterson v. Leggio, 347 So.2d 1262, 1264 (La.App. 1st Cir.1977), this court succinctly set forth the law applicable to a continuance as follows:
A continuance, of course, may be granted in any case if there are good grounds therefor. C.C.P. Art. 1601. The granting or refusing to grant a continuance, absent peremptory causes (C.C.P. Art. 1602), lies within the sound discretion of the trial judge. Weighed against the possibility of injustice, unfairness and inequity which might result from a premature trial, is the effect that a continuance might have on the administration of justice, including congested court dockets, and just as important, a defendant's corollary right to have serious charges against him judicially resolved within a reasonable time. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3rd Cir.1976), writs refused, 329 So.2d 458 (La.1976).
A careful review of the record, particularly considering Carr's knowledge of the transfer of interest, convinces us that the trial court did not abuse its discretion in the instant case. Carr presented no evidence or argument indicating that he was prejudiced by the denial of his motion for a continuance.

HIBERNIA'S STATUS
Carr contends that Hibernia is not a holder in due course because of the manner in which it acquired the promissory notes. He fails to articulate in legal parlance his reasons for this conclusion or the consequences.
LSA-R.S. 10:3-302 sets forth the requirements for status as a holder in due course, as follows:
(1) A holder in due course is a holder who takes the instrument
(a) for value; and
(b) in good faith; and
(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
(2) A payee may be a holder in due course.
(3) A holder does not become a holder in due course of an instrument:
(a) by purchase of it at judicial sale or by taking it under legal process; or
(b) by acquiring it in taking over an estate; or
(c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor.
(4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased.
As a holder in due course, Hibernia would take the note free from all claims of any person or defenses of any party to the note with whom Hibernia has not dealt, with several exceptions. See LSA-R.S. 10:3-305.
In this case, we find it unnecessary to determine whether Hibernia is a holder in due course. Hibernia is a holder and has the right to seek enforcement of the note under LSA-R.S. 10:3-301. As a holder, its rights are clearly articulated in LSA-R.S. 10:3-306, which addresses the rights of one not holder in due course, as follows:

*1111 Unless he has the rights of a holder in due course any person takes the instrument subject to
(a) all valid claims to it on the part of any person; and
(b) all defenses of any party which would be available in an action on a simple contract; and
(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose; and
(d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive indorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party.
In the instant case, Carr has neither alleged nor proven the existence of any claim or defense to the notes. Considering the entire record, we find that the trial judge did not err in granting judgment in favor of Hibernia on each of the promissory notes.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Carr is cast for all costs on appeal.
AFFIRMED.
SHORTESS, J., concurs with reasons.
SHORTESS, Judge, concurring.
Each of the three preprinted notes provide in pertinent part that "FOR VALUE RECEIVED, the undersigned (whether one or more), jointly, severally and in solido, promise to pay to the order of bearer or creditor stated above ..." (emphasis added). The creditor referred to is First National Bank (FNB). FNB did not endorse any of the three notes, and the only evidence introduced concerning an assignment by FNB or assumption of the notes by Hibernia was the sole testimony of one of Hibernia's employees, Edward F. Gantar, Jr. Gantar testified that he understood Hibernia had purchased all of FNB's assets except loans issued in connection with First National Corporation stock.
The majority classifies the notes as bearer paper apparently relying on LSA-R.S. 10:3-111, which provides, in part, that "[a]n instrument is payable to bearer when by its terms it is payable to (a) bearer or the order of bearer; or (b) a specified person or bearer...." However, LSA-R.S. 10:3-110(3) states that "[a]n instrument made payable both to order and to bearer is payable to order unless the bearer words are handwritten or typewritten." The confusion this particular note generates evidenced itself first at trial. Gantar during cross-examination stated the instrument was payable to the order of FNB. Subsequently, on redirect at the urging of counsel, Gantar testified that the notes were payable to the order of bearer.
Nevertheless, regardless of the ultimate classification of the notes, I believe the majority reaches the correct result. Although Hibernia may not be a "holder" because the notes were not endorsed by FNB, a mere transferee of a note can enforce the rights transferred to him by showing the transfer was valid and accounting for the absence of the endorsement. See LSA-R.S. 10:3-201(1), and LSA-R.S. 10:3-307 comment 2. Gantar's uncontradicted testimony clearly favors Hibernia. Moreover, the defendant in his pleadings admitted that the assets of FNB were purchased by Hibernia. In light of the strong public interest in the speedy and orderly disposition of failed banks' assets, I must conclude Hibernia met its burden of proof and respectfully concur.
NOTES
[1] The promissory notes, introduced into evidence as P-1, P-2, and P-3, represent the following indebtedness, respectively:

1. Promissory note, dated September 30, 1987, for $13,980.56 plus interest, payable in one installment due on December 29, 1987;
2. Promissory note, dated November 21, 1986, for $5,028.50 plus interest, payable in seventeen monthly installments of $313.84, beginning December 21, 1986, and one final payment of the balance plus interest due on May 21, 1988; and
3. Promissory note, dated September 30, 1987, for $25,250.00 plus interest, payable in one installment due on December 29, 1987.
[2] The peremptory exceptions raising the objections of no cause of action and no right of action are separate and distinct, each serving a particular purpose and each following particular procedural rules. LSA-C.C.P. art. 927(4) and (5); Smith v. Livingston Parish Police Jury, 423 So.2d 5 (La.App. 1st Cir.1982). The essential function of the objection of no right of action is to raise the question of whether a remedy afforded by law can be invoked by a particular plaintiff and to determine if the plaintiff has a right or legal interest in the subject matter of the suit. It relates specifically to the person of the plaintiff. Directional Wireline Services, Inc. v. Tillett, 552 So.2d 1201 (La. App. 1st Cir.), writ denied, 551 So.2d 1343, 1344 (La.1989); BJH, Inc. v. Thompson, 540 So.2d 428 (La.App. 1st Cir.), writ denied, 542 So.2d 511 (La.1989). The objection of no cause of action raises the issue of whether the law grants a remedy to anyone for the particular grievance set forth by the plaintiff. In re Norton, 471 So.2d 1053 (La.App. 1st Cir.1985).

In the instant case, Carr's exception addresses whether FNB is the proper party to file suit on the promissory notes and, as such, is an objection of no right of action.
[3] Each of the three promissory notes provided as follows:

FOR VALUE RECEIVED, the undersigned (whether one or more), jointly, severally and in solido, promise to pay to the order of bearer or creditor stated above.... (Emphasis added).