499 So.2d 598 (1986)
Michael H. O'KEEFE
v.
BREAUX MART GENERAL MEYERS, INC., and Prosper Paul Breaux, Jr.
No. 86-CA-418.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Rehearing Denied January 16, 1987.
Writ Denied March 13, 1987.
*599 Berrigan, Danielson, Litchfield, Olsen and Schonekas, E. John Litchfield, New Orleans, for plaintiff-appellant.
Lamothe & Hamilton, Charles E. Hamilton, III, Karen Milner, New Orleans, for defendants-appellees.
Before CHEHARDY, C.J., and KLIEBERT and GOTHARD, JJ.
CHEHARDY, Chief Judge.
This is a suit by a sublessor against his sublessee for rent arrearages accrued over a 12-year period. The trial judge found that all but three years of the arrearages had prescribed and awarded judgment to the sublessor accordingly. Both parties have appealed.
The property involved, located on Severn Avenue in Metairie, Jefferson Parish, is the site of a supermarket constructed by the defendant-sublessee, Breaux Mart, Inc. On December 8, 1970 Michael H. O'Keefe, the plaintiff, leased the land from its owners, John H. Marque and John A. Marque. On the same day, O'Keefe subleased the land to Breaux Mart General Meyers, Inc. (now Breaux Mart, Inc.) and Prosper Paul Breaux Jr., as guarantor, for a primary term of 20 years at a rental of $3,300 per month, commencing on April 1, 1971, pursuant to a written ground lease.
From April 1971 through October 1971, Breaux Mart paid the stipulated $3,300 per month. Commencing in November 1971 and for 144 months thereafter Breaux Mart paid $3,000 per month$300 less than the rent stipulated in the leasewithout objection from O'Keefe.
The only provision in the lease relating to nonpayment of rent states that if the lessee fails to make the rental payment as agreed upon when due and there shall be owing at any one time 90 days arrears of the payments, then the lease shall immediately mature for the entire term of the lease and the whole unpaid balance shall become due and exigible 60 days after the lessee receives written notice of the default by certified mail.
On December 19, 1983, more than 12 years after Breaux Mart began making the reduced rent payments, Breaux Mart received a certified letter from O'Keefe's attorney advising that Breaux Mart owed O'Keefe $45,600 in past-due rent and demanding immediate payment of that amount plus 10% attorney's fees. On January 11, 1984 O'Keefe filed this suit, seeking to recover the entire 145 months of arrearages. He did not seek to accelerate the lease.
In their answer, Breaux Mart and Prosper Paul Breaux Jr. asserted that O'Keefe had no right of action because he had assigned his rights under the lease; that he had failed to name an indispensible party, the assignee; that he had waived any right to complain of past rentals due by acquiescence in the reduced payments for 12 years; and that the sublease had been amended orally by the parties in November 1971 to reduce the rent from $3,300 to $3,000 per month. In addition the defendants filed a reconventional demand, seeking a declaratory judgment that the rent had been reduced by oral amendment.
(Shortly before filing suit, O'Keefe had assigned his rights under both the sublease and the primary lease to Atlas Leasing Company, Inc. The parties stipulated prior to trial that the assignment was intended to apply only to prospective rents and excluded O'Keefe's right to the past-due rent asserted here.)
At trial the only witnesses were O'Keefe, Paul Breaux Jr. (as president of Breaux *600 Mart) and Paul Rogyom (Breaux's attorney at the time of the alleged amendment to the lease). O'Keefe testified that in November 1971 Paul Breaux had contacted him about reducing the rent payments to $3,000 per month. According to O'Keefe, Breaux's reason for the reduction was that business at the newly-constructed store was not as lucrative as he had projected. O'Keefe said he discussed the matter several times with Breaux, but ultimately refused to make a reduction. O'Keefe received a written lease amendment reducing the rent from Breaux's attorney, but he never signed it.
O'Keefe testified he was not aware that Breaux had been making reduced rent payments because all his rental properties are handled through his agents or employees and he is never directly involved in receiving the rents or in the bookkeeping. In 1983, when he conducted an exhaustive examination of his records in the course of a federal investigation into his finances, he discovered that for the preceding 12 years Breaux Mart had been paying $300 per month less than the rent stipulated in the lease.
Breaux, on the other hand, testified that the parties had originally contemplated rent of $3,000 a month, but had increased it to $3,300 as a "finder's fee" or commission to O'Keefe because O'Keefe was to arrange or secure a $300,000 loan for Breaux. Breaux said he ultimately obtained financing on his own, however, and therefore felt the $300 additional rent was unnecessary. According to Breaux, O'Keefe agreed to reduce the rent because he had not had to act as a middleman for Breaux's financing. Breaux stated he contacted his attorney, Rogyom, who prepared an amendment to the lease regarding the adjustment in the rental. Breaux was aware that O'Keefe had never signed or returned the amendment, but nonetheless Breaux began sending the reduced payments in November 1971.
On further examination, O'Keefe admitted that Breaux had probably advised him in 1971 that he was sending the reduced payments, but O'Keefe could not definitely recall whether he was aware of it at the time.
Rogyom testified he did not participate in the discussions between O'Keefe and Breaux regarding the rent reduction, but prepared the lease amendment and forwarded it to O'Keefe. O'Keefe failed to sign it, however, and Rogyom stated O'Keefe told him he would sign it if they produced a clear lien certificate on the property to establish there were no liens resulting from construction of the store. Rogyom forwarded the certificate to O'Keefe but O'Keefe never signed or returned the amendment to him. Rogyom advised Breaux of this fact but was given no further instructions by Breaux regarding the lease.
In contrast, O'Keefe explained he required a lien certificate because Breaux had pledged a $50,000 certificate of deposit to O'Keefe in lieu of filing a bond for construction liens. O'Keefe stated he would not return the pledged C.D. to Breaux without proof that it was no longer required to protect the property owners against liens.
The trial court concluded the defendants had failed to present sufficient evidence that the lease had been amended; therefore, the $3,300 rent was in effect. He rejected defendants' argument that O'Keefe had acquiesced in the reduced payments and thereby had waived his right to demand the arrearages. The court also denied O'Keefe's contention that the underpayments of rent should be imputed to the debts earliest due and found that all arrearages accruing more than three years before suit was instituted had prescribed.
The court awarded O'Keefe $10,800, representing rent due from January 1981 to January 1984, together with attorney's fees as stipulated in the lease, interest and costs. The court found further that Atlas Leasing was entitled to the sums in the registry of the court (Breaux Mart's monthly payments of the disputed $300 made since the suit was filed), plus attorney's fees and costs. In addition, the court *601 ruled that the amount of future rental payments due Atlas Leasing under the lease is $3,300 per month for the primary term of the lease.
O'Keefe appeals the determination that he can recover no more than three years' past-due rent. He relies on the doctrine of imputation of payment, particularly the provisions of LSA-C.C. art. 1868: "When the parties have made no imputation, payment must be imputed to the debt that is already due. * * * If the obligor had the same interest in paying all debts, payment must be imputed to the debt that became due first."
He points out that Breaux Mart's rent checks bore no notation that they were made in regard to any particular debt nor any evidence that they were meant to be in full payment of any particular debt. Under this argument, a portion of each $3,000 rent payment made after November 1971 would have been applied to the previous month's rent arrearage. Thus, in December 1971 $300 would have been imputed to the November rent, leaving only $2,700 to pay the December rent, with a resulting arrearage of $600. In January 1972, $600 would have been imputed to the December arrearage, leaving only $2,400 to be applied to January rent and a January arrearage of $900. In February, $900 would have been applied to January, leaving only $2,100 paid in February and $1,200 owing. The process would have continued in the same manner in the succeeding months and years.
According to O'Keefe, when all payments made by Breaux Mart are applied to the oldest rent due, Breaux Mart is left owing $43,500, more than 13 months rent. Under these calculations, Breaux Mart's rent arrearages would be fully paid through December 1982, with no payment since then, so that O'Keefe would be entitled to the entire $43,500 because he filed suit within three years of December 1982.
Breaux Mart appeals the trial court's rejection of its claim that the lease was orally amended to reduce the rent. It argues the court was manifestly erroneous in finding that defendant had failed to prove the modification of the lease. In the alternative, Breaux Mart contends the trial court should have found that O'Keefe's behavior in ignoring the reduced rent payments for a 12-year period was a waiver of his right under the lease to demand the full rent.
We find no prior jurisprudence that clearly deals with whether the doctrine of imputation of payments may be applied to rent arrearages under a ground lease. We need not address that issue, however, because in this case there is no need for the doctrine as a device to avoid prescription.
We find prescription is not applicable here becauseunless the lease was orally modified in 1971the $3,000 monthly payments were partial payments on the amounts due. As such, they acted as a constant acknowledgement by the debtor of the debt, thereby continuously interrupting prescription. See LSA-C.C. art. 3464; Marr v. Johnson, 204 So.2d 806 (La.App. 2 Cir.1967).
Regarding O'Keefe's silence and inaction during the 12 years of reduced rent payments, we cannot accept his excuse that he was unaware of the lessened payments. We do not question his personal veracity on this point, but as a matter of law he is bound by the actions of his employees. Payment by a debtor to an authorized agent of his creditor is equivalent to payment to the creditor himself. LSA-C.C. art. 1857; Caballero v. Wilkinson, 367 So.2d 349 (La.1979).
If O'Keefe is held to have had knowledge of the reduced payments, did his silence and inaction constitute a waiver of his right to recover the arrearages? We conclude it did not. We acknowledge the many cases that hold a lessor who accepts performance of a lease in a manner contrary to its provisions is deemed to have waived any right to complain that the performance was unsatisfactory. See, e.g., Eldemire v. Shilts, 442 So.2d 1351 (La.App. 3 Cir.1983), writ denied 445 So.2d 452; Lee Lbr. Co., Ltd. v. International Paper Co., 345 So.2d *602 212 (La.App. 3 Cir.1977), writ denied 347 So.2d 503. The rationale behind this principle is that the lessor's conduct lulls the lessee into a false sense of security; in order to hold the lessee to the explicit terms of the lease, the lessor must give advance notice of his intention to strictly enforce the lease in the future.
None of those cases, however, apply to nonpayment or reduced payments of rent. They deal, instead, with late rent payments or with violations of other requirements of the lease. The elements of a contract of lease are the thing, the price and the consent. LSA-C.C. art. 2671. A lessee who does not pay his rent has failed in performance of his obligation under the lease and the lessor thereby has the right to enforce payment. Cf. LSA-C.C. arts. 1756 and 1758.
We conclude, therefore, that a lessor's silence or inaction does not waive his right to receive the rent due. (If such a waiver could occur, there would be no reason for a prescriptive period for rent arrearages.) A lessor is entitled to recover rent for the lessee's possession of the premises under the doctrine of unjust enrichment. See Garner v. Perrin, 403 So.2d 814 (La.App. 2 Cir.1981).
The question remains, however, whether O'Keefe's silent acceptance of the reduced rent payments was a modification of the lease. Because leases are not required to be in writing, they may be modified orally. Wahlder v. Tiger Stop, Inc., 391 So.2d 535 (La.App. 3 Cir.1980). We conclude the trial judge erred in finding Breaux Mart failed to carry its burden of proof that the lease had been amended.
A party may be held in some instances to have accepted an offer and to have entered into a binding contract through silence or inaction or by some sort of performance under a written agreement although the contract was not signed by the accepting party; under such circumstances, acceptance of the offer may be implied from the actions of the party to whom the offer was made. Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3 Cir. 1974), writ denied 293 So.2d 177. "When there had been an implied acceptance of an offer, the contract thus formed is as binding on the person so accepting the offer as it is on the offerer." Id, at 558.
O'Keefe had actual knowledge of Breaux's proposed amendment to the lease. As discussed above, O'Keefe is held to constructive knowledge of the reduced rent payments. His failure to sign the lease amendment is, under the circumstances, to no avail. His continued silence and inaction in accepting the reduced payments over a 12-year period constituted an acceptance of the proposed amendment. Cf. Pelican Elec. Contractors v. Neumeyer, 419 So.2d 1 (La.App. 4 Cir.1982).
For the foregoing reasons, the judgment of the district court is reversed. Judgment is hereby rendered in favor of Breaux Mart, Inc. and Prosper Paul Breaux Jr. and against Michael H. O'Keefe, dismissing O'Keefe's demand. Judgment is further rendered in favor of Breaux Mart, Inc. and Prosper Paul Breaux Jr. and against Michael H. O'Keefe and Atlas Leasing Company, Inc., decreeing the amount of rent due during the primary term of the lease herein is $3,000 per month. Costs are assessed against Michael H. O'Keefe.
REVERSED AND RENDERED.