WALTZER, Judge.
This is an appeal from a December 7, 1990 judgment of the Thirty-Fourth Judicial District Court, Parish of St. Bernard, the Honorable David S. Gorbaty, Judge presiding, granted in favor of the Defendants, St. Bernard Shooting Center, Inc. and Arnold F. Frichter, and against the Plaintiff, James E. Frichter, finding that plaintiff has no interest in a certain promissory note executed by the St. Bernard Indoor Shooting Center, Inc. dated December 14, 1982 in the full sum of SIXTY-TWO THOUSAND FIVE HUNDRED AND NO/ 100 ($62,500.00) DOLLARS payable to James E. Frichter. From that judgement, plaintiff James E. Frichter appeals.
On appeal, plaintiff-appellant raises one specification of error:
1. The promissory note at issue can only be transferred in the matter allowed under LSA-R.S. 10:3-202.
Plaintiff-appellant in his brief at page 8 argues as follows:
“The relevant facts in evidence show absolutely and without contradiction that the promissory note, which is the subject of this lawsuit remains today and has always been since 1983, the date of its issuance, by the St. Bernard Indoor Shooting Center, Inc. to James E. Fri-chter in the possession of James E. Fri-chter and has never been given to anyone much less the defendant/appellee, Arnold F. Frichter. The promissory note also has never had any writing on its reverse side, much less any endorsement by James E. Frichter to anyone, including Arnold F. Frichter. There is no other way to transfer ownership of a promissory note; therefore, the promissory note must still be owned by James E. Frichter, plaintiff/appellant.”
LSA-R.S. 10:3-202 provides as follows:
§ 3-202. Negotiation
“(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery.
(2) An endorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.
(3) An endorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue. If it purports tó be of less it operates only as a partial assignment.
(4) Words of assignment, condition, waiver, guaranty, limitation or disclaimer *118 of liability and the like accompanying an endorsement do not affect its character as an endorsement.”
Plaintiff-appellant has confused transfer with negotiation as defined under LSA-R.S. 10:3-202. Endorsement and delivery are not the only ways to transfer a promissory note, although they may be the only ways to negotiate a promissory note. LSA-R.S. 10:3-301 makes this distinction clear when it specifically provides that:
“The holder of an instrument whether or not he is the owner may transfer or negotiate it ...” (Emphasis supplied).
Indeed, LSA-R.S. 10:3-201 further emphasizes this distinction when it states:
“Unless otherwise agreed a transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor. Negotiation takes effect only when the endorsement is made and until that time there is no presumption that the transferee is the owner.” (Emphasis supplied).
Our courts have noted other events which cause the transfer of a promissory note other than endorsement and/or delivery. It has long been held in Louisiana law that title to a promissory note may be transferred without either endorsement or delivery of the note. Griffin v. Cowan, 15 La.Ann. 487 (1860). In Hughes v. Harrison, 2 La. 89, 90 (1830) the court stated:
“It is true it is said in the books, promissory notes payable to order, are transfer-rable by endorsement only; we understand by this that without an endorsement, the assignee is not invested with the right of endorsing over the note, or resisting the drawers claim for compensation of sums due him by the transfer, or on account of payment made before the transfer, and before the note was due. But he certainly can transfer his interest therein without endorsing the note, as is done in the case of a cession of goods or an assignment to trustees for the benefit of creditors. Endorsable paper, passes also by the assignment of law to executors, curators, heirs &c.” (Emphasis supplied.)
In Gaines v. Fitzgibbons, 168 La. 260, 264, 121 So. 763, 764 (1929) the Louisiana Supreme Court reaffirmed this line of jurisprudence saying:
“And in Maddox v. Robbert, 165 La. 694, 115 So. 905, this court said: ‘It is a mistake to say that the title or ownership of a note can only be transferred by an endorsement or written assignment’ — citing Hughes v. Harrison, 2 La. 89; Scott v. McDougall, 14 La.Ann. 309; Griffin v. Cowan, 15 La.Ann 487.”
In First Nat. Bank v. Carr, 572 So.2d 1106 (La.App. 1st Cir.1990), the First Circuit found that where one bank purchased all of the assets of another bank, the purchasing bank was not a holder in due course because the promissory note was not endorsed, but the purchasing bank was a transferee of the note.
Accordingly, plaintiff-appellant’s specification of error is without merit.
We further find that the trial court did not err in its credibility determinations. In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
James and Arnold Frichter are brothers. They, along with Andrew Klein and Richard Mortillaro, commenced business as the St. Bernard Indoor Shooting Center, Inc., which was located on real estate referred to in this suit as the “Aycock St. property.” To capitalize the corporation, each of the four shareholders personally borrowed money on a loan from the St. Bernard Bank. Each shareholder then used the borrowed money to capitalize the corporation. The corporation, in turn, executed 4 promissory notes, one payable to each shareholder, reimbursing that shareholder for the borrowed funds used to capitalize and thus repaying that shareholder’s loan. Eventually problems ensued between the brothers relative to the operation of this and other jointly owned corporations. Four suits relating thereto were filed: two in St. Bernard Parish and two in St. Tammany Parish. On March 8, 1989 in Covington before the Honorable Brady H. Fitzsim- *119 mons, Judge, 22nd Judicial District Court, the parties verbally agreed to a settlement which was then read into the record and transcribed. The transcript of the settlement indicates the following:
“We have stipulated on this. Mr. James Fritcher, the plaintiff, is here and Mr. Arnold Fritcher, the defendant, is here. We stipulate as follows; I’ll read it into the record: Plaintiff and defendant stipulate to a consent judgment in favor of plaintiff and against defendant in the sum of a hundred and twenty-one thousand five hundred dollars plus fifteen percent attorneys fees; said judgment amount to bear interest from March 8, 1988, at ten percent until paid and all costs. Immediately recordable against defendant, execution of which judgment is suspended until such time as ninety days shall pass from this date for the purpose of accomplishment of the following settlement which confected will fully satisfy the judgment, to-wit: One, plaintiff and his wife, that’s James E. Fritcher, will relinquish in favor of defendant, Arnold F. Fritcher, and his wife, all of his right, title and interest to the Aycock Street property in Arabi, Louisiana; two defendant Arnold F. Fritcher and his wife, will relinquish in favor of plaintiff, James E. Fritcher and his wife, all of his right, title and interest to the Solidelle, So-l-i-d-e-l-l-e, Street and Paris Road property in Chalmette; three, plaintiff will accept full and complete liability for the debt against said properties at Solidelle and Paris Road, which debt will be reduced by fifty thousand dollars and defendant will be removed as a party to the obligation; four, defendant will borrow seventy-five thousand dollars, using the Aycock Street property as security, which defendant agrees to pay to plaintiff in exchange for all of his right, title and interest that plaintiff has in the capital stock of the St. Bernard Parish Indoor Shooting Range, Inc., a domestic corporation, in the sum of twenty-five thousand dollars and the other fifty thousand dollars to implement paragraph three above by payment to Peoples Bank on plaintiff’s behalf; five, all of the above transactions shall be accomplished by sale, exchange, dissolution or otherwise based on an opinion of Charles S. Ducet (sic), Jr., their joint accountant, which opinion shall be rendered before the last day of April 1989; six, each party will bear his own tax consequences, vis a vis, income, sales, real estate, or other taxes; seven, the delay for the execution of this consent judgment hearing entered shall be extendable for not longer than ninety days from this date as may be required to secure financing subject to each party making good-faith application within ten days of this date; eight, plaintiff, James E. Fritcher, agrees, concurrent with the implementation and satisfaction of this consent judgment, to dismiss with prejudice, each party to bear its own cost and attorney fees in the following suits: There’s another pending suit in the Twenty-Second Judicial District, 88-12748, two suits in the Thirty-Fourth Judicial District in St. Bernard, 58075 and 57919, or whatever numbers .those suits are. And plaintiff agrees not to pursue any of his claims in the bankruptcy of Fritcher’s Sportsman’s Haven, Inc., now pending in the Eastern District of Louisiana in bankruptcy court there not to assist any other creditor from doing so unless consent judgment has to be enforced by judicial process. Nine, all adverse claims by the parties referenced a boat or boats and alleged conversion of partnership funds are hereby resolved simultaneous with the satisfaction of the terms of the consent judgment; ten, a judgment shall be signed by all parties and presented to the Court within fifteen days or either party can present a judgment in accordance with these terms.
THE COURT:
Okay, sir. Mr. James Fritcher, do you agree with this stipulation, a consent judgment which I will make a judgment of the Court in this matter and this case is now hereby closed?
MR. JAMES FRICHTER:
Yes, sir, I do.
THE COURT:
*120 Mr. Arnold Frichter, do you agree that this is to be the judgment of the Court and the matter had (sic) been tried and the matter is now closed.
MR. ARNOLD FRICHTER:
Yes, sir, I do.
THE COURT:
So ordered. It is now the judgment of the Court, effective immediately, and the judgment to be submitted will only be a confirmation of the oral judgment given at this point.
MR. GUTH:
Thank you, Your Honor.
MR. BISCHOF:
Thank you, Your Honor.”
Because the settlement required the input of their accountant relative to the best way to structure the transactions and the input of banks relative to refinancing, the settlement provided that if certain real estate transfers did not occur within 90 days then the judgment would be made executory. The real estate transfers did in fact take place.
Plaintiff claims that the settlement agreement which provided in part that he would relinquish “... all right, title and interest of plaintiff in capital stock of St. Bernard Indoor Shooting Range, Inc ...” did not'include the promissory note.
Arnold Frichter testified that the shareholders did not have the money to capitalize the corporation out of their own pockets, so they obtained loans from St. Bernard Federal. This is in agreement with Jim Frichter’s testimony that he obtained a loan in order to capitalize the business and that he continued to pay interest on the loan until the settlement agreement in St. Tammany. In order to repay St. Bernard Federal, Arnold would issue a check on the Frichter Sportsmen’s Haven account to Jim in the amount of $867. Jim would deposit the check into his account and in turn write a check for $867 to St. Bernard Federal as a payment on the capitalization loan. Arnold further testified that his intention at the time of the confection of the settlement agreement was not merely to receive the stock certificate, but to be divorced from his brother in their business dealings. He testified that it was his intention that they were finished and that he would not have paid $25,000 for stock worth a negative $250,000 divided by 4. Additionally, Jim Frichter is relieved of his obligation under the St. Bernard loan, which the St. Bernard Indoor Shooting Center has assumed.
Contrasted to this testimony are the assertions of Jim Frichter, his wife Sherran, and his sister Carol Scarboro that he did not intend to transfer the note or stop receiving the $867 monthly payment. He did admit, however, that he is relieved of and intended to be relieved of payment on the capitalization loan and that it was the intention of all parties to “divorce” all of their business arrangements.
It is apparent that the intent of all of the parties was for the settlement to be a transfer of all assets and liabilities of St. Bernard Shooting to Arnold Frichter and a transfer of all assets and liabilities in the Solidelle property to James Frichter with a cash payment for the difference.
The accountant for the Frichter brothers, Charles Doize, testified as to his understanding of the agreement at the time that it was confected as follows:
“That Jimmy Frichter was to receive $25,000.00 for his interest and right of all assets, all stocks, all equipment from St. Bernard Indoor Shooting Range. That $25,000.00 was to be his compensation for his right in again, the shooting range and the building and land and any assets of the corporation.
Including any debt?
Including any debt.” (Tr.222).
Apparently, none of the attorneys involved in the confection of the agreement were aware of the existence of the promissory note. Charles Doize, the accountant who reputedly represented both of the Fri-chter brothers equally, further testified that he failed to reveal the existence of the note at that time and that as a result the note was not included in the agreement. In stating that the note was not included in the agreement, however, Charles Doize, an accountant, was stating his opinion as to a conclusion of law which he is not compe *121 tent to make. The trial court judge found that the phrase “all of his rights, title and interest ... in the capital stock” was broad enough to include the promissory note and that that phrase triggered a transfer of the promissory note.
The trial judge was correct in his factual assessment of this situation and in his credibility calls relative to the witnesses. The language of the settlement was broad enough to include a transfer of the promissory note. Thus the trial court judge was not manifestly erroneous in his factual determinations.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.