NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0461

DCR MORTGAGE 7 SUB 1, LLC

VERSUS

LEGENDS SQUARE, LLC, MICHAEL D. KIMBLE, AND
MITCHELL W. KIMBLE

Judgment Rendered: _NOV 2 0 2024_

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C-691062, Sec. 24

The Honorable Donald R. Johnson, Judge Presiding

* * * * *

| | |
|---|---|
| David A. Lowe<br>Baton Rouge, Louisiana | Attorneys for Defendants/Appellants<br>Legends Square, LLC, Michael D.<br>Kimble, Mitchell W. Kimble, Kimble |
| William C. Helm<br>Baton Rouge, Louisiana | Development, LLC, and Horace<br>Mitchell |
| Scott R. Cheatham<br>Robert Parrott<br>New Orleans, Louisiana | Attorneys for Appellee<br>DCR Mortgage 7 Sub 1, LLC |

* * * * *

**BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.**

**STROMBERG, J.**

The defendants/appellants, Michael D. Kimble, Mitchell W. Kimble, Horace L. Mitchell, and Kimble Development, LLC, appeal the trial court's November 20, 2023 grant of summary judgment in favor of the plaintiff/appellee, DCR Mortgage 7 Sub 1, LLC. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On February 2, 2016, Legends Square, LLC ("Legends Square"), as borrower, and First NBC Bank ("First NBC"), as lender, executed a "TERM LOAN AGREEMENT" (the "Loan Agreement") pursuant to which Legends Square executed a "FNBC TERM LOAN PROMISSORY NOTE" (the "Note") payable to First NBC in the principal amount of $6,090,297.00. The Note was payable in monthly installments of principal and 5.00% interest commencing on March 15, 2016, with the unpaid balance of principal, interest, and all other amounts due on the maturity date of February 2, 2023. Michael D. Kimble ("M.D. Kimble") signed the Loan Agreement and the Note as manager of Legends Square.

Also on February 2, 2016, as a condition of the Loan Agreement, M.D. Kimble, Kimble Development, LLC[1] ("Kimble Development"), Mitchell W. Kimble ("M.W. Kimble"), and Horace L. Mitchell ("Mitchell") executed a "GUARANTY AGREEMENT" ("Guaranty Agreement") wherein they guaranteed the full and prompt payment of certain "[l]iabilities" listed in the Guaranty Agreement. The term "[l]iabilities" is defined in the Guaranty Agreement as follows:

> **Liabilities**. The term "Liabilities" in this Guaranty means all obligations, indebtedness and liabilities of the Borrower [Legends Square] to the Bank [First NBC], or any of its subsidiaries or affiliates or their successors, in connection with the following:
>
> (1) that certain Term Loan Agreement of even date herewith, between the Bank and Borrower (as amended, modified or supplemented from time to time, the "Loan Agreement"), including all obligations,

---

[1] M.D. Kimble signed for Kimble Development, LLC as its manager.

indebtedness and liabilities of the Borrower under the Term Loan Promissory Note, executed by the Borrower in connection therewith; and

(2) that certain Term Loan Security and Pledge Agreement executed by the Borrower in connection with the Loan Agreement (the "Security Agreement").

The Guaranty Agreement further requires the guarantors to reimburse First NBC "for any out of pocket costs and expenses, including reasonable attorneys' fees, that the Bank may pay in collecting from the Borrower or the Guarantor[.]" The Guaranty Agreement also provides that it "binds the Guarantor's heirs, beneficiaries, personal representatives, successors and assigns, and benefits the Bank and its successors and assigns. The Bank may assign this Guaranty in whole or in part without notice upon an assignment of the related Liabilities."

Also on February 2, 2016, in accordance with the terms of the Note and the Loan Agreement, M.D. Kimble and M.W. Kimble (collectively the "Kimbles") executed a "TERM LOAN SECURITY AND PLEDGE AGREEMENT (KIMBLES)" (the "Security Agreement") wherein they pledged a security interest in and collaterally assigned to First NBC their membership interest in several real estate holding companies (collectively the "Collateral"). Additionally, by executing the Security Agreement, the Kimbles agreed they would "not assign, sell, mortgage, lease, transfer, further pledge or grant a security interest in, subordinate, or encumber or otherwise dispose of or abandon any part of the Collateral during the term hereof without the prior written consent of [First NBC]" until the amounts due under the Note and Loan Agreement were paid. The Security Agreement specifically provides that First NBC may assign its rights and obligations under the Note to any assignee, who will then become vested with all benefits granted to First NBC in the Security Agreement.

3

On February 3, 2016, a UCC Financing Statement ("UCC-1") was filed and recorded in the UCC Records with the Clerk of Court for the Parish of Lincoln, State of Louisiana, detailing First NBC's security interest in the Collateral.

Thereafter, First NBC failed and a motion was filed by the Commissioner of Financial Institutions of the State of Louisiana to close and liquidate First NBC, and to appoint the Federal Deposit Insurance Corporation (the "FDIC") as its receiver. On April 29, 2017, the motion was granted, and the FDIC was confirmed as receiver of First NBC and was vested with title to all assets of First NBC.

On November 7, 2017, the FDIC, as receiver for First NBC, executed a "**LIMITED POWER OF ATTORNEY**" (the "Limited Power of Attorney") designating Michael P. McGinn ("McGinn") and J. Cameron Childs ("Childs"), employees of DCR Mortgage 7 Sub 1, LLC ("DCR"), as "Attorney(s)-in-Fact" with the authority to act on behalf of the FDIC as follows:

> To execute, acknowledge, seal and deliver on behalf of FDIC, as Receiver for First NBC Bank, New Orleans, Louisiana, all instruments of transfer and conveyance, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits and supporting documents as may be necessary or appropriate to evidence the sale and transfer of any asset contained in the Loan Pool enumerated above [Loan Pool: 2017 CRE-LA Pool], pursuant to that certain Loan Sale Agreement dated as of November 9, 2017, between FDIC, as Receiver, as aforesaid, and Buyer.

The Limited Power of Attorney was effective from November 9, 2017 through November 9, 2019.

Thereafter, Childs executed an "**ALLONGE TO PROMISSORY NOTE**" (the "Allonge"), which states, in pertinent part, "[t]his allonge is attached to and made a part of that certain Promissory Note dated February 2, 2016, from Legends Square, L.L.C. payable to First NBC Bank in the original principal amount of $6,090,297.00." The Allonge, which is undated, contains the following language:

4

Pay to the order of

DCR MORTGAGE 7 SUB 1, LLC,
a Delaware limited liability company

Without Recourse

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First NBC Bank, New Orleans, Louisiana

By: [signature of J. Cameron Childs]
Name: J. Cameron Childs
Attorney-in-Fact

On November 29, 2017, Childs, acting pursuant to the Limited Power of Attorney, executed an "**ASSIGNMENT OF NOTE AND MORTGAGE**" (the "Assignment") wherein he attested to the fact that First NBC was the owner and holder of the Note, Security Agreement, and Guaranty Agreement (collectively the "Loan Documents"), and that the FDIC, as receiver for First NBC, entered into a "Loan and Sale Agreement" with DCR and DCR purchased the underlying debt secured by the Loan Documents. The Assignment further provides:

> [First NBC] hereby assigns, sells, set over, transfer, and deliver all of its right, title and interest in and to the Loan Documents to DCR, and DCR hereby accepts the assignment and assumes all obligations of the mortgagee under the Loan Documents. This assignment is made without recourse, representation or warranty, express or implied, by FDIC in its corporate capacity or as Receiver.

On November 21, 2019, DCR filed suit against Legends Square, M.D. Kimble, M.W. Kimble, Kimble Development, and Mitchell for breach of the Note, the Security Agreement, and the Guaranty Agreement, and sought recognition of its security interest as set forth in the Security Agreement.

Legends Square, Kimble Development, M.D. Kimble, M.W. Kimble, and Mitchell answered the suit and admitted that Legends Square executed the Note and that Kimble Development, the Kimbles, and Mitchell executed the Guaranty Agreement.

5

DCR subsequently propounded discovery on M.D. Kimble, M.W. Kimble, Kimble Development, and Mitchell (collectively "defendants"), including interrogatories, requests for production of documents, and requests for admissions. On November 16, 2022, DCR filed a motion to compel discovery, asserting defendants failed to timely respond to the discovery requests.

On January 6, 2023, the trial court granted DCR's motion to compel, finding that defendants failed to respond to DCR's discovery, did not file an opposition to DCR's motion to compel, and failed to attend the hearing on the motion to compel, despite their counsel being served with the order setting the motion for hearing. The trial court ordered defendants to respond to DCR's interrogatories and requests for production of documents, and deemed admitted DCR's requests for admission pursuant to La. Code Civ. P. art. 1467.

On June 19, 2023, DCR filed a motion for summary judgment seeking judgment against defendants for the amount due to DCR under the Loan Documents and for recognition of DCR's security interest in the Collateral. DCR attached to its motion an affidavit by McGinn, the Senior Vice President of DCR, who attested to the fact that he is familiar with and in charge of the loan account relating to the obligations owed by Legends Square and defendants to DCR. McGinn identified a true and correct copy of the Loan Documents, which were attached to his affidavit. McGinn attested to the fact that the FDIC was appointed as the receiver for First NBC in its bankruptcy proceeding and identified a true and correct copy of the order ("Receivership Order") in the bankruptcy proceeding closing First NBC, ordering liquidation of First NBC, confirming the FDIC as receiver for First NBC, and vesting the FDIC with title to all assets of First NBC without the execution of any instruments of conveyance, assignments, transfer, or endorsement. McGinn attested that as receiver for First NBC, the FDIC executed the Limited Power of Attorney to

6

give him and Childs the authority to execute documents necessary to evidence the sale and transfer of certain loans, including the loan evidenced by the Loan Documents. McGinn stated the FDIC indorsed the Note to DCR pursuant to the Allonge, a true and correct copy of which was attached to his affidavit. McGinn further stated that the FDIC also executed the Assignment, a true and correct copy of which was attached to his affidavit, and assigned all rights, title, and interest in the Loan Documents to DCR. McGinn attested that DCR is the current holder and owner of the Note.

McGinn further stated in his affidavit that DCR's interest in the Collateral is perfected pursuant to the UCC-1, which originally named First NBC as secured party, but was amended on October 28, 2019, to substitute DCR as secured party of the Collateral. McGinn identified true and correct copies of the UCC-1 and the amendment ("UCC-3"), both of which were filed with the Lincoln Parish clerk of court. McGinn attested to the fact that Legends Square and defendants failed to make payments under the terms of the Note despite demand, which constituted a default under the terms of the Loan Documents, and whereupon the entire principal balance and non-default interest became due, together with late charges, default interest, and attorneys' fees and expenses incurred in connection with collecting the debt.[2] McGinn attested to the fact that DCR filed a motion in Legends Square's bankruptcy proceedings and obtained an order, dated September 18, 2020, from the bankruptcy court holding that the automatic stay in the bankruptcy proceedings does not apply to defendants. McGinn stated that as of June 15, 2023, defendants are indebted to DCR for the unpaid principal sum of $6,090,297.00, accrued contractual

---

[2] McGinn stated the defendants also defaulted on the Loan Documents due to the sale of real property by Willowbrook Center, LLC, an entity described as part of the Collateral in the Security Agreement. McGinn identified a true and correct copy of an act of cash sale recorded in the East Baton Rouge property records evidencing the September 13, 2018 sale.

interest on the principal balance in the amount of $1,444,753.78, and continuing to accrue at a rate of $845.87 per day, and attorneys' fees in the amount of $130,191.71, and continuing to accrue, plus all costs of the proceedings.

DCR also attached to its motion for summary judgment the trial court's January 6, 2023 order granting DCR's motion to compel, along with DCR's interrogatories, requests for production of documents, and requests for admissions propounded on each of the defendants. Notably, the requests for admissions, which were deemed admitted by the trial court, included a request that defendants admit that copies of the Note, Loan Agreement, Guaranty Agreement, Security Agreement, Limited Power of Attorney, the Allonge, the Assignment, and the UCC-1 attached to the discovery requests were true and correct copies. DCR also sought admission that Legends Square and defendants failed to make payments under the Note. DCR requested admission that on April 28, 2017, the Civil District Court for the Parish of Orleans entered an order appointing the FDIC as receiver for First NBC. DCR sought admission that defendants are liable to DCR for the entire balance owed under the Note, plus interest, costs, fees, and all other sums provided for under the terms of the Loan Documents.[3]

On October 27, 2023, defendants filed an opposition to DCR's motion for summary judgment. Defendants initially argued certain items attached to DCR's motion for summary judgment, including the Note, the Limited Power of Attorney, the Allonge, and the Assignment, were inadmissible as they were not attached to a deposition and McGinn lacked the personal knowledge to identify the documents. Defendants argued that without these documents, DCR failed to prove that the FDIC assigned the Loan Agreement to DCR, that DCR is the holder or owner of the Note,

---

[3] DCR also attached to its motion for summary judgment transcripts of defendants' depositions scheduled for December 8, 2022; despite notice, defendants failed to attend the scheduled depositions.

8

and that DCR can pursue its claims against defendants. Defendants also asserted that DCR failed to provide admissible evidence that the FDIC was the successor to First NBC, so as to allow the FDIC to transfer the Loan Documents to DCR. Defendants argued that even if the Allonge was admissible, it was not attached to the Note so as to become a part thereof. Defendants attached to their opposition an affidavit by M.D. Kimble, wherein he acknowledged that First NBC agreed to loan $6,090,297.00 to Legends Square.

On October 23, 2023, a hearing was held on DCR's motion for summary judgment. The trial court took the motion under advisement and ordered the parties to prepare proposed findings of fact and conclusions of law, and proposed judgments.

On November 20, 2023, the trial court signed a written judgment granting DCR's motion for summary judgment and adopting DCR's proposed findings of fact and conclusions of law as its reasons for judgment.[4] The written judgment entered judgment in favor of DCR and against defendants, *in solido*, in the amount of $7,784,510.16, representing the principal sum of $6,090,297.00, accrued interest in the amount of $1,564,021.45 as of November 3, 2023, and attorneys' fees and costs in the amount of $130,191.71, plus legal interest from the date of judgment until paid, along with all costs of the proceedings. The trial court also rendered judgment against the Kimbles and recognized DCR's security interest in the Collateral. Defendants subsequently appealed the trial court's judgment.

## STANDARD OF REVIEW

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary

---

[4] DCR's proposed findings of fact and conclusions of law included a determination that all documents attached to DCR's motion for summary judgment were admissible.

9

judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(A)(3); **Lucas v. Maison Insurance Company**, 2021-1401 (La. App. 1st Cir. 12/22/22), 358 So.3d 76, 83-84.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. See La. Code Civ. P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an adequate opportunity for discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. Code Civ. P. art. 966(A)(4).[5]

On a motion for summary judgment, the initial burden of proof rests with the mover. See La. Code Civ. P. art. 966(D)(1); **Lucas**, 358 So.3d at 84. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated.

---

[5] Louisiana Code of Civil Procedure article 966 was amended by Acts 2023, No. 317, § 1, which expanded the exclusive list of documents that may be filed or referenced in support of or opposition to a motion for summary judgment. However, DCR's motion for summary judgment was filed on June 19, 2023, prior to the effective date of the amendment, and we therefore refer to the version of Article 966 in effect prior to the 2023 amendment. See **Rainey v. Knight**, 2023-0133 (La. App. 1st Cir. 11/3/23), 378 So.3d 116, 121 n. 3.

10

Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(D)(1); **Lucas**, 358 So.3d at 84.

## EVIDENTIARY OBJECTIONS

Defendants assert that the trial court erred by overruling their evidentiary objections to the Limited Power of Attorney, the Allonge, the Assignment, and the UCC-1, which were attached to McGinn's affidavit, because they were not identified in and attached to a deposition. Defendants argue these documents could not be introduced through McGinn's affidavit because he did not have personal knowledge of these documents. Defendants also assert that the trial court should not have considered the portions of McGinn's affidavit relating to these documents. Defendants argue DCR "offered inadmissible evidence not based upon personal knowledge" to establish that the FDIC "took over First NBC." Defendants assert that without evidence demonstrating that the FDIC was a successor or assign of First NBC, it could not transfer the Note to DCR.

As noted, affidavits are one of the exclusive documents that may be filed in support of a motion for summary judgment. La. Code Civ. P. art. 966(A)(4). Additionally, other documents that are not included in the exclusive list of La. Code Civ. P. art. 966(A)(4), such as photographs, pictures, video images, or contracts, are permitted if they are properly authenticated by an affidavit or deposition to which they are attached. See La. Code Civ. P. art. 966, comments—2015, comment (c).

11

When an objection to an affidavit in support of or in opposition to a motion for summary judgment is made in accordance with La. Code Civ. P. art. 966(D)(2), the only issue to be determined is whether that affidavit is in compliance with La. Code Civ. P. art. 967. **Mariakis v. North Oaks Health System**, 2018-0165 (La. App. 1st Cir. 9/21/18), 258 So.3d 88, 95. Article 967(A) states that supporting affidavits shall be made on personal knowledge, shall provide facts that would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. The abuse of discretion standard applies to the trial court's ruling on an objection to a document filed in support of or in opposition to a motion for summary judgment that is raised by a party in a timely filed opposition or reply memorandum in accordance with La. Code Civ. P. art. 966(D)(2). **Pottinger v. Price**, 2019-0183 (La. App. 1st Cir. 10/23/19), 289 So.3d 1047, 1053.

Where business records are concerned, the courts have deemed Article 967 satisfied when the affiant is qualified to identify the business records as such. **U.S. Bank Nat'l Ass'n as Trustee For RFMSI 2005S7 v. Dumas**, 2022-0604 (La. App. 1st Cir. 4/3/23), 363 So.3d 1232, 1236, writ denied, 2023-00733 (La. 9/26/23), 370 So.3d 478. Where the affiant is familiar with the account and business records, it is not necessary for the affiant to show that he personally prepared the business records or that he had direct, independent, first-hand knowledge of their contents. **Regions Bank v. Louisiana Pipe & Steel Fabricators, LLC**, 2011-0839 (La. App. 1st Cir. 12/21/11), 80 So.3d 1209, 1213 (finding senior vice president of bank tasked with monitoring loan had the requisite personal knowledge and was competent to testify about loan documents). See also **Hibernia Nat. Bank v. Rivera**, 07-962 (La. App. 5th Cir. 9/30/08), 996 So.2d 534, 540 (finding affidavit of bank's senior vice

12

president who identified business records was sufficient under La. Code Civ. P. art. 967).

As discussed, in his affidavit, McGinn attested to the fact that he is the Senior Vice President of DCR, is familiar with and in charge of the loan account relating to the obligations owed by Legends Square and defendants, and is familiar with the Loan Documents evidencing those obligations. McGinn further stated he has personal knowledge of the facts contained in his affidavit. McGinn identified true and correct copies of the Limited Power of Attorney, the Allonge, the Assignment, the UCC-1, and the Receivership Order, which were attached to his affidavit. We find McGinn's affidavit sufficiently demonstrated his personal knowledge to testify to and identify DCR's records in regard to defendants' obligations to DCR, including the Limited Power of Attorney, the Allonge, the Assignment, the UCC-1, and the Receivership Order.

Additionally, the genuineness of these documents was deemed admitted pursuant to the trial court's January 6, 2023 order granting DCR's motion to compel and deeming admitted its requests for admissions. Louisiana Code of Civil Procedure article 1466 provides, in pertinent part:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Articles 1422 through 1425 set forth in the request or of the truth of any relevant matters of fact, including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying.

If a party fails to respond to a request for admission within thirty days of service of the request, the matter is admitted. La. Code Civ. P. art. 1467(A). Any matter deemed admitted under Article 1467 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. La. Code Civ. P. art. 1468. The court may permit withdrawal of an admission when the presentation of

13

the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal of the admission will prejudice him in maintaining his action or defense on the merits. La. Code Civ. P. art. 1468. Generally, the courts have given full effect to Articles 1467 and 1468 when there has been a total lack of response to requests for admissions. **Dan-Cin Const. Co. v. Thrasher**, 2008-1552 (La. App. 1st Cir. 2/13/09), 9 So.3d 205, 208. The language of Article 1467 is very clear; the matter is admitted unless a written answer or objection is served on the party making the request within the specified time after service of the request. **Dan-Cin Const. Co.**, 9 So.3d at 208. However, Article 1467 is not a trap set for the litigant; it provides many options for the party on whom the request is served. For example, if the party cannot answer within the specified time, the court may allow additional time. See La. Code Civ. P. art. 1467; **Dan-Cin Const. Co.**, 9 So.3d at 208. Additionally, a party against whom a fact has been deemed admitted has the opportunity to seek to have the fact withdrawn or amended. See La. Code Civ. P. art. 1468; **Dan-Cin Const. Co.**, 9 So.3d at 208. However, if a party fails to take any steps available to it, the fact is admitted and, according to Article 1468, is conclusively established. **Dan-Cin Const. Co.**, 9 So.3d at 208.

As discussed, defendants failed to respond to DCR's discovery, including the requests for admission, and further failed to ask for additional time to respond. Defendants did not file any pleadings requesting the admissions be withdrawn or amended, and did not file an opposition to DCR's motion to compel. Defendants argue they "could not have authenticated any of these documents because they were not parties to any of them." However, admissions may be used to establish a controversial issue constituting the crux of the matter in litigation. **Vardaman v. Baker Center, Inc.**, 96-2611 (La. App. 1st Cir. 3/13/98), 711 So.2d 727, 731. Accordingly, we find the trial court did not abuse its discretion by considering the

Limited Power of Attorney, the Allonge, the Assignment, the UCC-1, and the Receivership Order.

## DCR'S RIGHT TO ENFORCE THE NOTE AND THE GUARANTY

Defendants argue the trial court erred by granting DCR's motion for summary judgment because DCR failed to demonstrate that it has a right to enforce the Note or the Guaranty.[6] In particular, defendants assert that DCR failed to establish that the Note and the Guaranty were owned by First NBC when it failed, were transferred from First NBC to the FDIC, and were then transferred from the FDIC to DCR.

Summary judgment is an appropriate procedural device to enforce a promissory note when the defendant establishes no defense against enforcement. **Gurney v. McCoy**, 2021-0696 (La. App. 1st Cir. 4/4/22), 341 So.3d 703, 708. In order to enforce a promissory note, a plaintiff must: 1) produce and present the note into evidence; 2) show that it was signed by the defendant; 3) show that the defendant has defaulted; and 4) as to an assignee, present evidence of a chain of assignments. See **National Collegiate Student Loan Tr. 2003-1 v. Thomas**, 48,627 (La. App. 2d Cir. 11/20/13), 129 So.3d 1231, 1233-34. Similarly, to enforce a guaranty agreement, the lender must prove that the person from whom enforcement is sought executed the guaranty. See **Sheppard v. Progressive Bank**, 2022-57 (La. App. 3d Cir. 10/5/22), 2022 WL 5062423, *4 (unpublished).

As discussed, DCR presented true and correct copies of the Note and Guaranty Agreement. Defendants admitted that Legends Square executed the Note and that Kimble Development, the Kimbles, and Mitchell executed the Guaranty Agreement. McGinn stated in his affidavit attached to DCR's motion for summary judgment that Legends Square and defendants failed to make payments under the terms of the Note and the Guaranty Agreement, and the maturity date of the Note, when any unpaid

---

[6] Defendants do not provide argument regarding DCR's right to enforce the Security Agreement.

15

balance was due, was February 2, 2023. Additionally, the trial court deemed admitted the fact that defendants are liable to DCR for the entire balance owed under the Note, plus interest, costs, fees, and all other sums provided for under the terms of the Loan Documents.

As to transfer of the Note and the Guaranty, DCR presented the Receivership Order, wherein the FDIC was confirmed as receiver for First NBC, and was vested with title to all assets of First NBC without the execution of any instruments of conveyance, assignments, transfer, or endorsement.[7] Thereafter, the FDIC, as receiver for First NBC, executed the Limited Power of Attorney, thereby allowing Childs, as the FDIC's attorney-in-fact, to execute the Assignment. The Assignment, dated November 29, 2017 (within the window provided for by the Limited Power of Attorney), and signed by Childs as "Attorney-in-Fact" for the FDIC as Receiver for First NBC, contains language assigning First NBC's rights and interest in the Loan Documents, which are described as including the Note and the Guaranty, to DCR. Therefore, upon our *de novo* review, we find DCR presented sufficient proof of assignment of the Note and the Guaranty from First NBC to DCR. See La. Civ. Code art. 2642.[8] Accordingly, because we find no genuine issue as to material fact as to DCR's entitlement to judgment as a matter of law, we find that the trial court properly granted summary judgment in favor of DCR.

---

[7] The FDIC, as receiver of First NBC, is considered its successor with "all rights, titles, powers, and privileges" of First NBC by operation of law. See 12 U.S.C. § 1821(d)(2)(A).

[8] The Note, which meets the requirements of a negotiable instrument under La. R.S. 10:3-104, is subject to transfer by indorsement and delivery (*i.e.*, negotiation). See La. R.S. 10:3-201. Defendants argue DCR failed to prove transfer of the Note because the Allonge fails to adequately reference the Note and is undated. However, as explained, DCR provided sufficient proof of First NBC's assignment of the Note and the Guaranty to DCR, and therefore, DCR was not required to prove negotiation of the Note by First NBC. See **Frichter v. St. Bernard Shooting Center, Inc.**, 602 So.2d 116, 118 (La. App. 4th Cir.), writ denied, 608 So.2d 173 (La. 1992) ("[e]ndorsement and delivery are not the only ways to *transfer* a promissory note, although they may be the only ways to *negotiate* a promissory note.") (emphasis in original).

## CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment in favor of the plaintiff/appellee, DCR Mortgage 7 Sub 1, LLC, and against the defendants/appellants, Michael D. Kimble, Mitchell W. Kimble, Horace L. Mitchell, and Kimble Development, LLC, is affirmed. Costs of this appeal are assessed to defendants/appellants, Michael D. Kimble, Mitchell W. Kimble, Horace L. Mitchell, and Kimble Development, LLC.

**AFFIRMED.**